530 A.2d 480

**COMMONWEALTH of Pennsylvania**

v.

**Robert SHEAFF, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 20, 1986.

Filed Aug. 28, 1987.

---

614

Louis Lipschitz, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

Appellant was found guilty by a jury of burglary and was sentenced to seven and one-half to fifteen years incarcera-

tion. This is an appeal from the judgment of sentence entered after denial of appellant's post-trial motions.

■■■■ We find no need to address appellant's sufficiency of the evidence argument because appellant failed to properly preserve this issue for appellate review in his post-trial motions. In his post-trial motion, filed December 9, 1983, appellant framed the sufficiency of the evidence issue in "boilerplate" fashion, and thus did not preserve the issue for appellate review as required by *Commonwealth v. Holmes*, 315 Pa.Super. 256, 259–60, 461 A.2d 1268, 1270 (1983). *See Commonwealth v. Martin*, 346 Pa.Super. 129, 499 A.2d 344 (1985); Comment to Pa.R.Crim.P. 1123. While appellant did file a supplemental post-trial motion on February 8, 1984, where he reasserted his sufficiency of the evidence argument with the requisite specificity, the record does not show that appellant ever sought the necessary permission of the trial court to file this supplemental post-trial motion *nunc pro tunc*. Whether a defendant can file additional reasons for a new trial is a matter of discretion with the trial court. *Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974).

This Court, in its recent Opinion in *Commonwealth v. Kelly*, 365 Pa.Super. 28, 528 A.2d 1346 (1987), quoted the Pennsylvania Supreme Court in *Talley* as follows:

> The Supreme Court, in deciding the trial court did not abuse its discretion in refusing to permit the defendant to file additional reasons for a new trial, stated:
>
>> The rule provides that a defendant may request *leave* to file additional reasons for a new trial. This does not imply that a defendant can file these as a matter of right, but it is a matter of discretion with the trial court. In the facts of this case, we fail to see an abuse of that discretion.
>
> *Id.*, 456 Pa. at 579, 318 A.2d at 924.

We then went on to say:

> Rule of Criminal Procedure 1123(a), which is derivative of the rule cited in *Talley* (19 P.S. 1123) (footnote omitted), states:

### Rule 1123. Post-Verdict Motions

(a) Within ten (10) days after a finding of guilty, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pretrial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument, a hearing, or both shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions that are stated specifically and with particularity may be argued or heard. If the grounds asserted do not require a transcript, neither the filing, argument, nor hearing of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.

While the earlier version of Rule 1123 permitted additional time to file motions, if allowed by the court within the initial seven-day period, only those motions filed during the seven-day period or within such further time as the Court permitted could be argued at post-trial motions or on appeal. The current Pennsylvania Rule of Criminal Procedure 1123(a) is a recodification of the original Rule 1123 and, in addition to increasing the time for filing motions to ten (10) days (to provide uniformity with the Rules of Civil Procedure), the rule added the provision: 'If the grounds asserted do not require a transcript, neither the filing, argument, nor hearing of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.' While a custom appears to have developed whereby counsel, in filing original and timely post-trial motions, reserves the right to file additional motions, nothing in the rules permits unilateral extension of time, and in no event may supplemental motions be filed and heard *nunc pro tunc* unless filed in a reasonable time and with approval of the court.

* * * * * *

We hold that the supplemental post-verdict motions did not preserve the issues for review (whether filed or

merely submitted) despite the fact that the court below addressed them on the merits. *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983). Accordingly, the aforementioned issues have been waived.[2]

[2] We note that *Commonwealth v. Rosko*, 353 Pa.Super. 307, 509 A.2d 1289 (1986) is inapposite as there, a rule applicable to the Post Conviction Hearing Act (Pa.R.Crim.P. 1123(f)) was applied, whereas in an original case, the proper rule is Pa.R.Crim.P. 1123(a).

 To summarize and clarify our position in this case and the cases cited herein, we hold that permission *must* be requested and granted *on the record before* supplemental post-trial motions may be filed. Counsel may not simply reserve the right to file such motions by adding a notation to that effect in the original post-trial motions. In order to preserve the right to file supplemental motions after the transcript is received, a request must be approved in advance in a timely fashion. If permission is granted, and supplemental motions are filed, an allegation that could have been raised without the need for a transcript is still considered to be waived. *See Talley, supra.* This procedure is required by the mandate of Pa.R.Crim.P. 1123(a).

Since we find appellant's sufficiency argument waived, we will not review issues which have not been properly preserved for review. However, since appellant's remaining arguments were properly raised in his post-trial motions, we will address them.

 Appellant contends the trial court erred in admitting portions of a police report which contained the statement of a police officer—the partner of a testifying officer—who was not available to testify at the time of trial. We find no merit in this argument due to the fact that appellant's counsel himself referred to the non-testifying officer's report and even had a portion of that report admitted into evidence through testimony (N.T. 12/2/83, pp. 57–60). Appellant cannot now argue that it was error for the trial court to allow the Commonwealth to admit into evidence the full text of the non-testifying officer's report as hearsay (N.T. 12/2/83, pp. 77–79), when appellant's counsel "opened the door" for such testimony by first referring to the

report. As we stated in *Commonwealth v. McCabe*, 345 Pa.Super. 495, 498 A.2d 933 (1985): "If a defendant delves into what would be objectionable testimony on the part of the Commonwealth, the Commonwealth can probe further into the objectionable area." (Citations omitted.) Thus we find no error in admitting the report due to appellant's effective waiver of objection by first referring to the report.[1]

Appellant claims that the trial court erred in refusing to strike for cause a juror, Mr. Driscoll, who was employed as a crime investigator by a local community organization partially funded by the city and state governments. In *Commonwealth v. Jones*, 477 Pa. 164, 168, 383 A.2d 874, 876 (1978), our Supreme Court held "that one's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case." In quoting our earlier Opinion in *Commonwealth v. Colon*, 223 Pa.Super. 202, 206–7, 299 A.2d 326, 328 (1972), the Supreme Court stated:

> The categories of relationships which automatically call for removal should be limited because it is desirable to have a jury composed of persons with a variety of backgrounds and experiences. We believe that an enforcement officer is capable of professional objectivity in considering the case of a defendant accused of a crime against society. *Absent any real relationship to the case, the removal of an enforcement officer should depend on the sound exercise of discretion by the trial judge.* (Emphasis added by the Court).

*Id.*, 477 Pa. at 168, 383 A.2d at 876. Further, the *Jones, supra*, Opinion went on to adopt the following two-tier analysis we established in *Colon, supra*, to determine whether a police officer or law enforcement official could serve as a juror in a criminal case:

1. The trial judge did give a cautionary instruction to the jury which served to restrict their consideration of the statement to only those issues which had been testified to directly by the officer (N.T. 12/2/83, p. 79).

1. If a police officer has a 'real relationship' to the case, he must automatically be excluded from serving on a criminal jury.

2. If a police officer does not have a 'real relationship' to the case, he must be viewed in light of the traditional test for qualifications for jurors with the same scope of appellate review.

*Id.*, 477 Pa. at 169, 383 A.2d at 876–7. "The [traditional] test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor." *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. den.,* — U.S. —, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

Juror Driscoll did not have a "real relationship" to this case and thus would not fall under the first tier of the *Colon, supra,* test (N.T. 12/2/83, pp. 9–10). During a side bar voir dire, Mr. Driscoll stated that his appraisal of the evidence in a case where the defendant is charged with burglary would be unaffected by his ten or twelve years of experience investigating burglaries and other crimes. Further, the juror responded that his prior experience would not affect his decision with respect to the defendant/appellant (N.T. 12/2/83, pp. 4–7). Therefore, based on the record, we find no abuse of discretion on the trial judge's part in qualifying Juror Driscoll. *Colson, supra.*

Lastly, appellant argues that because the prosecutor engaged in misconduct, asked objectionable questions, made inappropriate comments and advanced improper arguments to the jury throughout the course of the entire trial and in closing argument to the jury, he was deprived of a fair trial. In support of this argument appellant lists some nineteen examples of what he claims to be prosecutorial "misconduct."

Not every intemperate, irrelevant, unwise or improper remark by a prosecuting attorney is grounds for a

mistrial. *Commonwealth v. Harvey*, 345 Pa.Super. 237, 498 A.2d 378 (1985). When the appropriateness of a prosecutor's statements are in question, a new trial will not be granted unless it is inevitable that the prosecutor's remark prejudices the defendant to such a degree that it prevents the jury from weighing the evidence and rendering a true verdict. *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984); *Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90 (1982); *Commonwealth v. Frazier*, 331 Pa.Super. 128, 480 A.2d 276, (1984).

■■■ Upon a thorough review of the record and specifically those areas cited by appellant's counsel, we find that we are in full agreement with the trial judge's assertion that while the prosecutor may have acted in a rude manner at times, his overall conduct did not unduly prejudice the jury so that they could not weigh the evidence and render a true verdict. In passing we note, without making a ruling, that the transcripts indicated that trial counsels' demeanor boardered on mutual animosity.

■■■ The most critical matter, dealing with alleged prosecutorial misconduct, that appellant raises concerned Mr. Lipschitz's, the defense counsel, cross-examination of one of the police detectives concerning his decision not to fingerprint the automobile and evidence therein, which appellant was said to have used in perpetrating the burglary of a small store. Also in question are certain comments made by the prosecuting attorney, Mr. Carpenter, on this matter during his closing argument to the jury. No attempts to obtain fingerprints were made by police in this case. Police found in the automobile defendant/appellant's driver's license, marked as Exhibit "C–2", and a rental agreement for the automobile, marked as Exhibit "C–3", which agreement listed the appellant as an additional driver for the automobile. After having cross-examined the police detective as to why he had not attempted to obtain fingerprints from the stolen merchandise in the automobile, defense counsel continued:

Q. I hand you C–2 and ask you whether or not this is a good surface to retain fingerprints?

A. Yes, sir.

Q. You made no test of that, did you?

A. No, sir, it wasn't necessary.

Q. I didn't ask you if it was needed.

A. I'm qualifying my statement.

Q. All I want to know is whether or not you made any effort to check on the fingerprints on that license?

A. No, sir.

MR. CARPENTER: Would you like to ask him if it was needed?

MR. LIPSCHITZ: Mr. Carpenter, when you're on this side of the fence, you ask your questions.

THE COURT: Counsel, please.

(N.T. 12/3/86, p. 134.) Appellant now maintains this comment by the prosecutor improperly suggested to the jury that the prints, if investigated, would have belonged to the appellant.

 Further, on redirect examination of the police detective concerning his decision not to obtain fingerprints from the scene, the prosecutor began:

Q. Detective Perks, would you agree that it's easy to second guess things?

MR. LIPSCHITZ: If your Honor please. That's a philosophical question.

MR. CARPENTER: It's a truism.

MR. LIPSCHITZ: I don't think it has any pertinence and I object.

THE COURT: Monday morning quarterbacking.

MR. LIPSCHITZ: The Eagles would never lose.

BY MR. CARPENTER:

Q. Would you think that if you did a hundred things, Mr. Lipschitz could find the one hundred and first thing that you should have done?

MR. LIPSCHITZ: I object. That's too much flattery for me to take.

624

THE COURT: Sustained.

(N.T. 12/3/86, p. 136-7.) Appellant now claims this was improper questioning on the part of the prosecution and that it also acted to prejudice the jury.

The prosecution then proceeded to question the detective on general procedures for fingerprinting and the fact that the red powder used could damage the merchandise of the victim's store. Additionally, the witness testified to the limited number of fingerprint technicians in the police department and the large number of felonies committed in the city of Philadelphia each year. Additionally, after having the detective explain smear prints and overlayed prints, the detective testified as to the large number of store employees and police officers that were present at the scene of the crime and who had handled the stolen merchandise in their efforts to place it back in the store. The officers present had touched the car and the glove compartment, as well as the driver's license and rental agreement. Earlier testimony disclosed the trunk had the tools used in the break-in and leather gloves.

■ Lastly, the detective testified the appellant had been returned to the scene. Over objection of defense counsel, the prosecutor continued:

BY MR. CARPENTER:

Q. So that if somebody who doesn't believe the police were to hear that under those circumstances the police testified that they recovered fingerprints from this briefcase or from this car, would he be inclined to believe that the fingerprints were placed there before or after the arrest?

MR. LIPSCHITZ: I object to the question.

THE COURT: I think that that is really asking for too much supposition on the part of the officer. Objection sustained.

BY MR. CARPENTER:

Q. What do you think Mr. Lipschitz would say?

MR. LIPSCHITZ: I still object.

THE COURT: Sustained.

MR. LIPSCHITZ: What I would say would not look good or sound good right now.

(N.T. 12/2/83, pp. 145–6.) Appellant claims the prosecutor's improper question over a sustained objection was prejudicial.

Upon a review of the transcript of the trial, we are convinced the above remarks made by the prosecutor during direct examination and on redirect examination did not have an adverse effect on the appellant either individually or cumulatively. While some of the remarks were unnecessary, they were not prejudicial in manner. Unlike *Commonwealth v. Hickman*, 319 Pa.Super. 261, 466 A.2d 148 (1983), the preeminent purpose of the trial—the determination of the guilt or innocence of the accused—was not subordinated by these remarks. We believe the jury was not hampered by these remarks from weighing the evidence and rendering a verdict.

 Finally, appellant argues that the prosecutor made certain improper comments concerning the police investigation and fingerprint matter during his closing argument to the jury. We find it more helpful in maintaining the proper context of these remarks to first refer to the following remarks made by defense counsel during his closing argument.

Why didn't the police examine all of the items and determine whose fingerprints were on there? There was some testimony that they wouldn't come out clear. Why not try it and find out? *That would have absolved Mr. Sheaff.* I say to you that the reason that they didn't want to try it is because they must have been satisfied, in their own minds, that these fingerprints *would not* establish Mr. Sheaff's presence at the place. (Emphasis added.)

(N.T. 12/5/83, p. 223). Further, "I submit to you that it should, because if they had done it, if they found any deposits or shreds of wood or deposits from the wood on the floor on any garment worn by Mr. Sheaff, the odds are we

wouldn't be here." (N.T. 12/5/83, p. 226–7.) Additionally, defense counsel stated: "I submit, had this investigation been complete, had all of the items been presented to the jury which would have resulted from a complete investigation, the odds are Mr. Sheaff would not be here to stand trial." (N.T. 12/5/83, p. 234.)

In response to these comments by appellant's trial counsel, the prosecutor stated in his closing argument:

[Mr. Lipschitz] said if they did look for [fingerprints] it would have exonerated him if they hadn't found his fingerprints there. But that's not true. Because we know that if you wore gloves, such as were found in the trunk, you don't leave a fingerprint. So the fact that they didn't find fingerprints wouldn't have exonerated him.

Now turning it around. Would the fact that they did find fingerprints or testified that they found fingerprints, would that prove the defendant's guilt beyond a reasonable doubt, such as Mr. Lipschitz said there wouldn't have been any case, he would have pled guilty? Would it?

. . . .

It's up to you, ladies and gentlemen. You have to go by your recollection. My recollection is that when arguing, Mr. Lipschitz said that had they looked for fingerprints, had they looked for bits of wood and found them, that there wouldn't have been any trial, that we wouldn't be here. All that means is that he would have pled guilty, rather than demanding a jury trial.

(N.T. 12/5/83, p. 251–2.)

We find the prosecutor justified in addressing appellant's trial counsel's closing comments concerning the adequacy of the police investigation and the lack of fingerprints. Appellant's counsel argued to the jury that had fingerprints been taken at the scene, appellant would have been "absolved" and more importantly that a trial would not have been necessary. This was a purely hypothetical argument on appellant's part. Appellant cannot now contend, after having presented this scenario, that it was improper for the

prosecutor to address this matter in his closing argument. By stating that defendant/appellant would have pled guilty, the prosecutor was simply presenting a different conclusion to be drawn by the jury from the appellant's hypothetical fingerprint search, in direct opposition to the one drawn by appellant's counsel. We find that neither inference was of a prejudicial nature which would affect the jury's weighing of the evidence and rendering of a verdict and do not warrant a new trial.

Accordingly, we affirm.

Judgment of sentence affirmed.